

U.S. Department of Justice

*Criminal Divison*
*Fraud Section*

---

1400 New York Avenue,     202-923-6451
Washington, D.C.

DCH/PL AGR
2018R00919

March 5, 2024

Dennis Carletta, Esq.
O'TOOLE SCRIVO LLC
14 Village Park Road
Cedar Grove, NJ 07009

      Re:    <u>Plea Agreement with Jean Wilson</u>

Dear Mr. Carletta:

    This letter sets forth the plea agreement between your client, Jean Wilson ("WILSON"), and the United States Department of Justice, Criminal Division, Fraud Section and the United States Attorney for the District of New Jersey (together, "this Office"). This offer will expire Today, March 5, 2024, at 5:00 p.m. if it is not accepted in writing by that date. If WILSON does not accept this plea agreement, her sentencing exposure could increase beyond what is discussed in this plea agreement as a result of this Office's investigation.

## Charge

    Conditioned on the understandings specified below, this Office will accept a guilty plea from WILSON to Count Two of the Superseding Indictment, which charges WILSON with Conspiracy to Commit Health Care Fraud and Wire Fraud in violation of 18 U.S.C. §§ 1343, 1347, and 1349 (Count Two). If WILSON enters a guilty plea and is sentenced on these charges and otherwise fully complies with this agreement, this Office will not initiate any further criminal charges against WILSON for conspiring to commit health care fraud and wire fraud from in or around March 2017 through in or around April 2019. In addition, if WILSON fully complies with this agreement, this Office will move to dismiss the remaining counts of the Superseding Indictment at sentencing.

    But if a guilty plea in this matter is not entered for any reason or a guilty plea or judgment of conviction entered in accordance with this agreement does not remain in full force and effect, this Office may initiate any other charges against WILSON even if the applicable statute of limitations period for those charges expires after WILSON signs this agreement, and WILSON agrees not to assert that any such charges are time-barred.

<u>Sentencing</u>

The violation of 18 U.S.C. § 1349 to which WILSON agrees to plead guilty in Count Two of the Indictment carries a statutory maximum prison sentence of 20 years and a statutory maximum fine equal to the greatest of (1) $250,000, or (2) twice the gross amount of any pecuniary gain that any persons derived from the offense, or (3) twice the gross amount of any pecuniary loss sustained by any victims of the offense. Fines imposed by the sentencing judge may be subject to the payment of interest.

The sentence to be imposed upon WILSON is within the sole discretion of the sentencing judge, subject to the provisions of the Sentencing Reform Act, 18 U.S.C. §§ 3551–3742, and the sentencing judge's consideration of the United States Sentencing Guidelines. Those Guidelines are advisory, not mandatory. The sentencing judge may impose any reasonable sentence up to and including the statutory maximum term of imprisonment and the maximum statutory fine. This Office cannot and does not make any representation or promise as to what Guidelines range may be found by the sentencing judge, or as to what sentence WILSON ultimately will receive.

Further, in addition to imposing any other penalty on WILSON, the sentencing judge as part of the sentence:

(1) will order WILSON to pay an assessment of $100 pursuant to 18 U.S.C. § 3013, which assessment must be paid by the date of sentencing;

(2) must order WILSON to pay restitution pursuant to 18 U.S.C. § 3563(b)(2) or § 3583(d);

(3) may order WILSON, pursuant to 18 U.S.C. § 3555, to give reasonable notice and explanation of the conviction to any victims of her offense;

(4) must order forfeiture, pursuant to 18 U.S.C. § 982(a)(7); and

(5) pursuant to 18 U.S.C. § 3583 may require WILSON to serve a term of release of not more than three years on each count, which will begin at the expiration of any term of imprisonment imposed. Should WILSON be placed on a term of supervised release and subsequently violate any of the conditions of supervised release before the expiration of its term, WILSON may be sentenced to not more than two years' imprisonment in addition to any prison term previously imposed, regardless of the statutory maximum term of imprisonment set forth above and without credit for time previously served on post-release supervision, and may be sentenced to an additional term of supervised release.

Restitution

Pursuant to the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, WILSON agrees to pay full restitution, jointly and severally with her co-conspirators, to the victim of the offense of conviction or from the scheme, conspiracy, or pattern of criminal activity underlying that offense in an amount that fully compensates the victim for the losses sustained as a result of those offenses as follows:

| Victim | Amount |
|---|---|
| Centers for Medicare and Medicaid Services | $66,814,459.00 |

WILSON further agrees to make restitution for the amount of tax due and owing for the calendar years 2014 through 2019 as determined by the Internal Revenue Service ("IRS"), but in no case less than $711,489.72, in accordance with 18 U.S.C. §§ 3663, 3663A, and 3664, including, but not limited to, 18 U.S.C. §§ 3663(a)(3) and 3663A(a)(3). The total amount of restitution consists of the following: (i) for calendar year 2014, $21,339.57; (ii) for calendar year 2015, $52,208.49; (iii) for calendar year 2016, $83,011.48; (iv) for calendar 2017, $57,230.60; for calendar 2018, $295,689.77; and (v) for calendar year 2019, $202,009.81. WILSON agrees to pay Title 26 interest on the restitution amount; interest runs from the last date prescribed for payment of the relevant tax liability until the IRS receives payment in full. The government will provide an updated interest figure at sentencing. The obligation to make such restitution shall be made a condition of probation, *see* 18 U.S.C. § 3563(b)(2), or of supervised release, *see* 18 U.S.C. § 3583(d), as the case may be. WILSON agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, WILSON agrees that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full. The IRS will use the amount of restitution ordered as the basis for a civil assessment under 26 U.S.C. § 6201(a)(4). WILSON does not have the right to challenge the amount of this restitution-based assessment. *See* 26 U.S.C. § 6201(a)(4)(C). Neither the existence of a restitution payment schedule nor WILSON's timely payment of restitution according to that schedule will preclude the IRS from immediately collecting the full amount of the restitution-based assessment, including levy and distraint under 26 U.S.C. § 6331. WILSON is entitled to receive credit for restitution paid pursuant to this agreement against those assessed civil tax liabilities due and owing for the same periods for which restitution is ordered. WILSON understands and agrees that this agreement does not resolve WILSON's civil tax liabilities, that the IRS may seek additional taxes, interest and penalties from WILSON relating to the conduct covered by this agreement and for conduct relating to another time period, and that satisfaction of the restitution debt does not settle, or compromise WILSON's obligation to pay any remaining civil tax liability. WILSON authorizes release of information to the IRS for purposes of making the civil tax and restitution-based assessments. WILSON understands that she is not entitled to credit with the IRS for any payment until the

payment is received by the IRS. If full payment cannot be made immediately, WILSON agrees to make a complete and accurate financial disclosure to the IRS on forms prescribed by the IRS (including, but not limited to, IRS Form 433-A and Form 433-B, as appropriate), and to disclose to the IRS any and all additional financial information and financial statements provided to the Probation Office. WILSON also agrees to provide the above-described information to the Probation Office. If WILSON makes a payment of the restitution agreed to in this paragraph prior to sentencing, the payment will be applied as a credit against the restitution ordered by the Court. In consideration of her plea, WILSON will not be further prosecuted criminally by this Office or the Tax Division of the Department of Justice with respect to tax offenses alleged in the Superseding Indictment.

### Forfeiture

As part of WILSON's acceptance of responsibility, WILSON agrees to forfeit the following to the United States of America, pursuant to 18 U.S.C. § 982(a)(7), all property, real or personal, WILSON obtained that constitutes or was derived, directly and indirectly, from gross proceeds traceable to the federal health care fraud conspiracy offense charged in Count Two of the Indictment, and all property traceable to such property, which WILSON agrees was approximately $7,835,936.00.

WILSON further agrees that one or more of the conditions set forth in 21 U.S.C. § 853(p) exists, entitling the United States to forfeit substitute assets equal to the aggregate value of the forfeitable property described above, in an amount not to exceed $7,835,936.00 (the "Money Judgment"). WILSON consents to the entry of an order requiring WILSON to pay the Money Judgment, in the manner described below (the "Order"), and agrees that the Order will be final as to WILSON prior to sentencing, pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, and which may be satisfied in whole or in part with substitute assets.

All payments made in full or partial satisfaction of the Money Judgment shall be made by (i) electronic funds transfer, as directed by the Office; or (ii) postal money order, bank, or certified check, made payable in this instance to the United States Marshals Service, indicating WILSON's full name and case number on the face of the check; and shall be delivered by mail to the United States Attorney's Office, District of New Jersey, Attn: Asset Recovery and Money Laundering Unit, 970 Broad Street, 7th Floor, Newark, New Jersey 07102. WILSON agrees that this Office may conduct any discovery needed to identify, locate, or dispose of property sufficient to pay the Money Judgment in full or in connection with any petitions filed with regard to proceeds or substitute assets, including depositions, interrogatories, and requests for production of documents, and the issuance of subpoenas.

WILSON further agrees that she will not contest the criminal, civil, or administrative forfeiture of the property listed on the attached Schedule B (the "Forfeitable Property"), that she will not file a petition in an ancillary proceeding or

a petition for remission or mitigation as to the Property; nor will she assist a third party in doing so. WILSON further agrees that she will take all necessary steps to pass clear title to the Forfeitable Property to the United States.

WILSON waives the requirements of Rules 32.2 and 43(a) of the Federal Rules of Criminal Procedure regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant understands that criminal forfeiture is part of the sentence that may be imposed in this case and waives any failure by the court to advise her of this pursuant to Rule 11(b)(1)(J) of the Federal Rules of Criminal Procedure at the guilty plea proceeding. The defendant waives any and all constitutional, statutory, and other challenges to the forfeiture on any and all grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment. WILSON further understands that WILSON has no right to demand that any forfeiture of WILSON's assets be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon WILSON in addition to forfeiture.

WILSON further agrees that not later than the date she enters her plea of guilty she will provide a complete and accurate Financial Disclosure Statement on the form provided by this Office. If WILSON fails to provide a complete and accurate Financial Disclosure Statement by the date she enters her plea of guilty, or if this Office determines that WILSON has intentionally failed to disclose assets on her Financial Disclosure Statement, WILSON agrees that that failure constitutes a material breach of this agreement, and this Office reserves the right, regardless of any agreement or stipulation that might otherwise apply, to oppose any downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, and to seek leave of the Court to withdraw from this agreement or seek other relief.

It is further understood that the Office will recommend to the Attorney General that any forfeited money or property be remitted or restored to eligible victims of the offense, pursuant to 18 U.S.C. § 982(b)(1), 21 U.S.C. § 853(i), 28 C.F.R. Pt. 9, and other applicable law, it being understood that this Office has authority only to recommend such relief and that the final decision of whether to grant relief rests with the Department of Justice, which will make its decision in accordance with applicable law.

### Rights of This Office Regarding Sentencing

Except as otherwise provided in this agreement, this Office may take any position with respect to the appropriate sentence to be imposed on WILSON by the sentencing judge. This Office may also correct any misstatements relating to the sentencing proceedings and provide the sentencing judge and the United States Probation Office all law and information relevant to sentencing, favorable or otherwise. And this Office may inform the sentencing judge and the United States

Probation Office of: (1) this agreement; and (2) the full nature and extent of WILSON's activities and relevant conduct with respect to this case.

### Stipulations

This Office and WILSON will stipulate at sentencing to the statements set forth in the attached Schedule A, which is part of this plea agreement. Both parties understand that the sentencing judge and the United States Probation Office are not bound by those stipulations and may make independent factual findings and may reject any or all of the parties' stipulations. Nor do these stipulations restrict the parties' rights to respond to questions from the Court and to correct misinformation that has been provided to the Court.

This agreement to stipulate on the part of this Office is based on the information and evidence that this Office possesses as of the date of this agreement. Thus, if this Office obtains or receives additional evidence or information prior to sentencing that it believes materially conflicts with a Schedule A stipulation, that stipulation shall no longer bind this Office. A determination that a Schedule A stipulation is not binding shall not release the parties from any other portion of this agreement, including any other Schedule A stipulation.

If the sentencing court rejects a Schedule A stipulation, both parties reserve the right to argue on appeal or at post-sentencing proceedings that the sentencing court did so properly. Finally, to the extent that the parties do not stipulate to a particular fact or legal conclusion in this agreement, each reserves the right to argue how that fact or conclusion should affect the sentence.

### Exclusion from Federal Health Care Programs

Defendant understands and acknowledges that as a result of this plea, Defendant will be excluded from participating in all federal healthcare programs, including the Medicare and Medicaid Programs ("Medicare" and "Medicaid," respectively). Defendant agrees to complete and execute all necessary documents provided by any department or agency of the federal government, including but not limited to, the United States Department of Health and Human Services, to effectuate this exclusion within sixty days of receiving the documents. This exclusion will not affect Defendant's right to apply for and receive benefits as a beneficiary under any federal health care program, including Medicare and Medicaid.

### Use of Statements

The Defendant waives any protection afforded by Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence. Any statements made by the Defendant in any proceeding under Rule 11 of the Federal Rules of Criminal Procedure and the Statement of Facts set forth in Schedule A, will

be admissible against the Defendant without limitation in any civil or criminal proceeding.

### Waiver of Appeal and Post-Sentencing Rights

As set forth in Schedule A and the paragraph below, this Office and WILSON waive certain rights to appeal, collaterally attack, or otherwise challenge the judgment of conviction or sentence.

### Immigration Consequences

WILSON understands that, if WILSON is not a citizen of the United States, WILSON's guilty plea to the charged offense will likely result in WILSON being subject to immigration proceedings and removed from the United States by making WILSON deportable, excludable, or inadmissible, or ending WILSON's naturalization. WILSON understands that the immigration consequences of this plea will be imposed in a separate proceeding before the immigration authorities. WILSON wants and agrees to plead guilty to the charged offense regardless of any immigration consequences of this plea, even if this plea will cause WILSON's removal from the United States. WILSON understands that WILSON is bound by this guilty plea regardless of any immigration consequences. Accordingly, WILSON waives any right to challenge the guilty plea, sentence, or both based on any immigration consequences. WILSON also agrees not to seek to withdraw this guilty plea, or to file a direct appeal, or any kind of collateral attack challenging the guilty plea, conviction, or sentence, based on any immigration consequences of the guilty plea or sentence.

### Other Provisions

This agreement is limited to this Office and cannot bind other federal, state, or local authorities. If requested to do so, however, this Office will bring this agreement to the attention of other prosecuting offices.

This agreement was reached without regard to any civil or administrative matters that may be pending or commenced in the future against WILSON. This agreement does not prohibit the United States, any agency thereof (including the Internal Revenue Service and Immigration and Customs Enforcement) or any third party from initiating or prosecuting any civil or administrative proceeding against her.

No provision of this agreement shall preclude WILSON from pursuing in an appropriate forum, when permitted by law, a claim that she received constitutionally ineffective assistance of counsel.

### No Other Promises

This agreement constitutes the entire plea agreement between WILSON and

this Office and supersedes any previous agreements between them. No additional promises, agreements, or conditions have been made or will be made unless set forth in writing and signed by the parties.

PHILIP R. SELLINGER  
United States Attorney

GLENN S. LEON  
Chief  
Criminal Division, Fraud Section  
U.S. Department of Justice

Darren C. Halverson  
Nicholas K. Peone  
Trial Attorneys  
Criminal Division, Fraud Section  
U.S. Department of Justice

APPROVED:

Thomas Tynan by /s/  
Thomas Tynan  
Rebecca Yuan  
Assistant Chiefs  
Criminal Division, Fraud Section  
United States Department of Justice

I have received this letter from my attorney, Dennis Carletta, Esq. I have read it. My attorney and I have reviewed and discussed it and all of its provisions, including those addressing the charge, sentencing, stipulations (including the attached Schedule A), waiver, forfeiture, restitution, and immigration consequences. I understand this letter fully and am satisfied with my counsel's explanations. I accept its terms and conditions and acknowledge that it constitutes the plea agreement between the parties. I understand that no additional promises, agreements, or conditions have been made or will be made unless set forth in writing and signed by the parties. I want to plead guilty pursuant to this plea agreement.

AGREED AND ACCEPTED:

_____          Date: 3-8-2024
Jean Wilson


I have reviewed and discussed with my client this plea agreement and all of its provisions, including those addressing the charge, sentencing, stipulations (including the attached Schedule A), waiver, forfeiture, restitution, and immigration consequences. My client understands this plea agreement fully and wants to plead guilty pursuant to it.

_____          Date: 3-8-2024
Dennis Carletta, Esq.
Counsel for Defendant

- 9 -

Plea Agreement With Jean Wilson

Schedule A

1. This Office and WILSON recognize that the United States Sentencing Guidelines do not bind the sentencing judge. Each party nevertheless agrees to these stipulations.

This Office and WILSON stipulate and agree as follows:

2. This Office and WILSON agree to stipulate to the following facts:

    a. Medicare is a "health care benefit program," as defined in 18 U.S.C. § 24(b). Medicare is a "Federal health care program," as defined in 42 U.S.C. § 1320a-7b(f).

    b. WILSON was a nurse practitioner licensed to practice medicine in New Jersey and several other states.

    c. WILSON certified to Medicare that she would comply with all Medicare rules and regulations and federal laws, including that she would not knowingly present or cause to be presented a false and fraudulent claim for payment by Medicare and that she would comply with the Federal Anti-Kickback Statute.

    d. Medicare only paid for orthotic brace orders that were medically necessary for the treatment or diagnosis of a patient's illness or injury. Medicare did not pay for orthotic braces that were procured through the payment of kickbacks and bribes.

    e. Between in or around March 2017 and in or around April 2019, WILSON, together with others, owned and operated two telemedicine companies, Advantage Choice Care and Telemed Care (together the "ACC Network"), AIM Healthcare PA ("AIM"), and two brace suppliers, Southeastern DME and Choice Care Medical.

    f. On July 2, 2016, WILSON signed a Stipulated Order to voluntarily surrender her Oregon nursing license. The Stipulated Order states, among other things, "[WILSON] admitted that she did not complete an assessment or provide face to face patient care. [WILSON] admitted that she did not develop a treatment plan or coordinate care with current treatment providers. [WILSON] stated that her conversation with the client was documented, and teaching about the medication was provided."

    g. By letter dated January 9, 2018, Medicare advised WILSON that a Medicare contractor was re-opening claims associated with certain beneficiaries for whom WILSON signed orders for braces based on "credible evidence . . . regarding

[WILSON's] billing practices." On or about January 24 2018, Wilson sent responsive documents including the brace orders that WILSON signed.

h. On January 24, 2018, WILSON received an e-mail from a marketer informing her that she was "flagged for Medicare fraud and will be under investigation for signing so many" brace orders.

i. In or about March 2018, WILSON and her husband arranged a third-party to become the nominee owner of Tele Medcare LLC. WILSON used the nominee owner's name to establish a Limited Liability Company in New York. The nominee owner opened a bank account for Tele Medcare LLC at WILSON and her husband's direction.

j. On or about March 9, 2018, WILSON received a text message from a nurse affiliated with the ACC Network informing her that an "the orthopedic on [a beneficiary's] case is wanting to turn me in for fraud because they don't have a contract with me and i sent hem braces."

k. By letter dated March 23, 2018, Medicare advised Wilson that a review of claims "reveal[ed] that there were beneficiaries for whom you were listed as ordering DME supplies [who] did not receive any Medicare services from you" and that the brace "ordering provider must be the treating provider."

l. On or about May 6, 2018, WILSON received a text message from a nurse affiliated with the ACC Network informing her that a family member of a brace recipient had called Medicare to report fraud.

m. In or about June 2018, WILSON arranged for a National Provider Identifier Number for Tele Medcare using a nominee owner's name.

n. In July 2018, WILSON executed Business Purchase Agreement that falsely indicated that WILSON had sold Choice Care Medical to her husband for $375,000.

o. In July 2018, a nurse affiliated with the ACC Network told WILSON that she was concerned about signing brace orders without seeing the patients or having x-ray reports to confirm the diagnosis.

p. On August 29, 2018, WILSON sent an e-mail to a business associate posing as the nominee owner of Tele Medcare LLC.

q. On December 28, 2018, WILSON received a text message from a nurse affiliated with the ACC Network informing WILSON that she had to contact each patient "or it's fraud."

r. On February 27, 2019, WILSON received a text message from a nurse affiliated with the ACC Network informing WILSON that she received a complaint from the board of nursing for fraud.

s. Wilson did not sufficiently investigate these allegations of fraud that she received during the course of the conspiracy.

t. WILSON and others, through the ACC Network, retained independent contractor medical professionals who signed orthotic brace orders for Medicare beneficiaries that were either medically unnecessary, ineligible for Medicare reimbursement, or not provided as represented. WILSON paid approximately $20 to medical professionals per beneficiary for whom they signed orthotic brace orders. In certain instances, Wilson only paid providers when they signed brace orders during a consultation. Often, the medical professionals would sign the orthotic brace orders based solely on a brief telephonic interaction with the beneficiary, or no interaction at all. These payments were kickbacks and bribes.

u. WILSON and others, including the contractor medical professionals paid by WILSON, gained access to the Medicare beneficiary information of thousands of Medicare beneficiaries and used that information to solicit Medicare beneficiaries to accept orthotic braces that did not meet Medicare's standard for medical necessity.

v. WILSON and others signed materially false and misleading documentation to support claims to Medicare.

w. WILSON and others solicited and received payments of $90 per beneficiary labeled "medical" and "consultation" expenditures from patient recruiting companies, orthotic brace suppliers, and others in exchange for arranging for the ordering of orthotic braces and prescription drugs for Medicare beneficiaries. These payments were kickbacks and bribes.

x. WILSON and others transferred brace orders to brace providers, patient recruiting companies, and others to support false and fraudulent claims to Medicare and Medicare sponsors that were submitted by brace suppliers located in the District of New Jersey and elsewhere.

y. WILSON and others, through Southeastern DME and Choice Care Medical, billed or caused to be billed Medicare in excess of approximately $2.8 million in false claims for orthotic braces.

z. Based on the stipulated conduct above, from in or around March 2018, and continuing through in or around April 2019, in the District of New Jersey and elsewhere, WILSON knowingly and willfully conspired and agreed with others to commit health care fraud and wire fraud in violation of 18 U.S.C. §§ 1343, 1347, and 1349.

     aa. During the conspiracy, as a result of this conduct, WILSON and others submitted or caused the submission of false and fraudulent claims to Medicare, Medicare sponsors, and Medicare Part D plans, in excess of approximately $136 million for orthotic braces and prescription drugs that were either medically unnecessary, ineligible for Medicare reimbursement, or not provided as represented. Medicare, Medicare sponsors, and Medicare Part D plans paid WILSON and others at least $66,814,459 for these claims.

  3. The version of the Guidelines effective November 1, 2023 applies in this case.

  4. The applicable guideline is U.S.S.G. § 2B1.1. Because the offense of conviction has a statutory maximum term of imprisonment of 20 years or more, this guideline carries a Base Offense Level of 7.

  5. The reasonable estimate of loss to Medicare was approximately $66,814,459. The loss amount was therefore more than $65,00,000, but was not more than $150,000,000, resulting in an increase of 24 levels. See U.S.S.G. § 2B1.1(b)(1)(K).

  6. WILSON committed a federal health care offense involving a Government health care program and the loss amount associated with that offense was more than $20,000,000, and thus, the offense level is increased by four levels. See U.S.S.G. § 2B1.1(b)(7)(ii).

  7. WILSON abused a position of public or private trust in that she used her position as a licensed nurse practitioner in a manner that significantly facilitated the commission or concealment of the offense, and thus the offense level is increased by two levels. See U.S.S.G. § 3B1.3.

  8. WILSON's offense involved sophisticated means and WILSON intentionally engaged in or caused the conduct constituting sophisticated means, specifically engaging in a fraudulent telemedicine scheme across multiple jurisdictions, used shell companies, and put those companies in the names of nominee owners. Thus, the offense level is increased by two levels. See U.S.S.G. § 2b1.1(b)(10).

  9. WILSON was an organizer, leader, manager, or supervisor in the criminal activity described above, resulting in an increase of 2 levels. See U.S.S.G. § 3B1.1(c).

  10. As of the date of this letter, WILSON has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for the offense charged. Therefore, a downward adjustment of 2 levels for acceptance of responsibility is appropriate if WILSON's acceptance of responsibility continues through the date of sentencing. See U.S.S.G. § 3E1.1(a).

  11. As of the date of this letter, WILSON has assisted authorities in the investigation or prosecution of her own misconduct by timely notifying authorities of

her intention to enter a plea of guilty, thereby permitting this Office to avoid preparing for trial and permitting this Office and the court to allocate their resources efficiently. At sentencing, this Office will move for a further 1-point reduction in WILSON's offense level pursuant to U.S.S.G. § 3E1.1(b) if the following conditions are met: (a) WILSON enters a plea pursuant to this agreement, (b) this Office, in its discretion, determines that WILSON's acceptance of responsibility has continued through the date of sentencing and WILSON therefore qualifies for a 2-point reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), and (c) WILSON's offense level under the Guidelines prior to the operation of § 3E1.1(a) is 16 or greater.

12. Accordingly, the parties agree that the total Guidelines offense level applicable to WILSON is 38 (the "Total Offense Level").

13. The parties agree not to advocate for any upward or downward adjustment or departure from the Guidelines range resulting from (a) the Total Offense Level and (b) the criminal history category that the sentencing judge applies under Chapter 4 of the Guidelines without any departure or variance. But each party may seek a variance from that Guidelines range, which the other party may oppose.

14. If the term of imprisonment does not exceed 240 months, and except as specified in the next paragraph below, WILSON will not challenge or seek to reduce by any means any component of the sentence imposed by the sentencing judge for any reason other than ineffective assistance of counsel. The term "any means" includes a direct appeal under 18 U.S.C. § 3742 or 28 U.S.C. § 1291, a motion to vacate the sentence under 28 U.S.C. § 2255, a motion to reduce the term of imprisonment under 18 U.S.C. § 3582(c)(1) or (c)(2), a motion for early termination of supervised release under 18 U.S.C. § 3583(e)(1), and any other appeal, motion, petition, or writ, however captioned, that seeks to attack or modify any component of the sentence. If the term of imprisonment is at least 235 months, this Office will not challenge by appeal, motion, or writ any component of the sentence imposed by the sentencing judge. The provisions of this paragraph bind the parties even if the sentencing judge employs a Guidelines analysis different from the one above.

15. Both parties reserve the right to file or to oppose any appeal, collateral attack, writ or motion not barred by the preceding paragraph or any other provision of this plea agreement. Moreover, the preceding paragraph does not apply to:

    (a)    Any proceeding to revoke the term of supervised release.

    (b)    A motion to reduce the term of imprisonment under 18 U.S.C. § 3582(c)(1)(A).

    (c)    An appeal from the denial of a § 3582(c)(1)(A) motion on the grounds that the court erred in finding no extraordinary and compelling circumstances warranting a reduced term of

imprisonment or that the court failed to consider those circumstances as a discretionary matter under the applicable factors of 18 U.S.C. § 3553(a).

<u>Plea Agreement With Jean Wilson</u>

<u>Schedule B</u>

1. The real property and appurtenances known as 125 Saint Catherine Cir, Richmond Hill, Georgia 31324.

2. The net proceeds from the tax sale of 321 Sonoma Drive, Pooler, Georgia 31322; 341 Sonoma Drive, Pooler, Georgia 31322; and 54 Ashleigh Lane, Savannah, Georgia 31407 (approximately $388,537.68).

3. All funds formerly on deposit in TD Bank account number 434-3695429 held in the name of Apex Properties, LLC) (approximately $6,533.93).

4. All funds formerly on deposit in TD Bank account number 434-3695445 held in the name of Avalon Investment Group LLC (approximately $1,259.17).

5. All funds formerly on deposit in TD Bank account number 436-1239431 held in the name of Reinaldo Wilson (approximately $275.28).

6. All funds formerly on deposit in Bank of America account number 3340-5918-2444 held in the name of Reinaldo Wilson (approximately $35,589.82).

7. Approximately $100,000, representing the proceeds from the sale in or about March 2020 of one 2018 Land Rover Range Rover, VIN SALGV5RE0JA395393.

8. Proceeds from the sale of one white 2019 BMW 740i, VIN WBA7E2C50KB454806.

9. Proceeds from the sale of one white 2017 Rolls Royce Ghost, VIN SCA664S59HUX54034.

10. Approximately $300,000 on deposit with the United States Marshals Service, representing the proceeds of twelve (12) TD Bank cashier's checks dated April 12, 2019 payable to Reinaldo Wilson, each in the amount of $25,000.